IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NATALIA LESCHENKO WILSON,

     Petitioner,

v.                                   Civil Action No. 3:14cv768

TAMMY BROWN, Warden of the Fluvanna
Correctional Center for Women,

     Respondent.

## MEMORANDUM OPINION

Petitioner Natalia Leschenko Wilson, a Virginia state inmate, brings, through counsel, this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] ("§ 2254 Petition"). (ECF No. 1.) Brown filed a Supplemental Motion to Dismiss ("Supplemental Motion") and Rule 5 Answer. (ECF Nos. 18, 19.) Wilson responded to the Supplemental Motion. (ECF No. 21.) Wilson also filed a Motion to Supplement the Record. (ECF No. 22.) Brown responded. (ECF No. 24.) Neither party filed a reply, and the time to do so has expired. The matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny Wilson's Motion to Supplement the Record. The Court will grant the Supplemental Motion to Dismiss and dismiss the § 2254 Petition.

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

> The Supreme Court [of the United States], a Justice thereof, a [federal] circuit judge, or a [federal] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

## I.  Procedural History

In 2010, the Commonwealth of Virginia ("Commonwealth") charged Wilson with three counts of capital murder, in violation of Virginia Code §§ 18.2-31(7)[2] and (12),[3] four counts of first degree murder, in violation of Virginia Code § 18.2-32,[4] and two counts of statutory burglary, in violation of Virginia Code §§ 18.2-90, -91.[5]  The capital murder counts carried the possibility of the death penalty.  Va. Code § 18.2-10(a).  Wilson's three counsel filed multiple motions on her behalf, including five motions to suppress her two confessions to the murders.

The Circuit Court of Prince William County, Virginia, ("Circuit Court") heard evidence on the motions for nine days, accepting the testimony of numerous witnesses and entering many exhibits into evidence.  Counsel then argued the motions for three days.  On March 29, 2012, the Circuit Court issued a lengthy ruling from the bench, finding that Wilson's confessions were obtained within the bounds of the United States and Virginia constitutions, and denying the motions to suppress.

On September 4, 2012, Wilson, represented by counsel, pleaded guilty in the Circuit Court to two counts of capital murder.  On September 18, 2012, the Circuit Court sentenced

---

[2] Virginia Code § 18.2-31(7) states that "[t]he willful, deliberate, and premeditated killing of more than one person as a part of the same act or transaction" shall constitute "capital murder."  Va. Code § 18.2-31(7).

[3] Virginia Code § 18.2-31(12) provides that "[t]he willful, deliberate, and premeditated killing of a person under the age of fourteen by a person age twenty-one or older" shall constitute "capital murder."  Va. Code § 18.2-31(12).

[4] "Murder, other than capital murder, . . . by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, . . . robbery, burglary or abduction, except as provided in § 18.2-31, is murder of the first degree, punishable as a Class 2 felony."  Va. Code § 18.2-32.

[5] Virginia Code sections 18.2-90 and -91 forbid entering, with or without breaking, into a dwelling house with the intent to commit murder, rape, robbery, arson, or any other felony.  Va. Code §§ 18.2-90, -91.

2

Wilson to two consecutive terms of life imprisonment. Wilson sought no direct appeal of her convictions or her sentence in the Court of Appeals of Virginia, the Supreme Court of Virginia, or the Supreme Court of the United States. Wilson did not file a habeas petition in the Circuit Court. Instead, she filed a habeas petition in the Supreme Court of Virginia, raising some of the same claims that she raises in the instant Petition. On July 31, 2014, the Supreme Court of Virginia granted the respondent's motion to dismiss and dismissed Wilson's petition on the merits. *Wilson v. Baskerville*, No. 131631, at 5 (Va. July 31, 2014). On November 7, 2014, the Supreme Court of Virginia denied Wilson's petition for rehearing. (Pet. Writ of Habeas Corpus ("§ 2254 Pet.") 3, ECF No. 1.)

On November 10, 2014, Wilson, by counsel, filed her § 2254 Petition in this Court, raising six grounds for relief. Respondent Tammy Brown filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[6] contending that all of Wilson's claims were procedurally defaulted or not exhausted. Following briefing, the Court denied in part and granted in part the Motion to Dismiss, dismissing Claims IV, V, and VI[7] of the § 2254 Petition.

---

[6] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[7] In its 2015 decision, this Court dismissed Claim IV, which asserted that Wilson's "constitutional protections against double jeopardy were violated by the state court's decision," (Pet. Writ of Habeas Corpus 35 ("§ 2254 Pet."), because it was procedurally defaulted. *Wilson v. Brown*, No. 3:14cv768, 2015 WL 5560198, at *5 (E.D. Va. Sept. 18, 2015). The Court also dismissed Claim V, which asserted that Wilson's "guilty plea was not knowing, intelligent, or voluntary," (§ 2254 Pet. 36), because it was not exhausted and was procedurally defaulted. *Wilson*, 2015 WL 5560198, at *4–5. Finally, the Court dismissed Claim VI, which largely asserted errors in state post-conviction proceedings by arguing that the Supreme Court of Virginia "manifestly misapplied the law and unreasonably determined facts," (§ 2254 Pet. 42), because it did not place a cognizable basis for federal habeas relief before the Court. *Wilson*, 2015 WL 5560198, at *6.

3

The Court ordered supplemental briefing.[8]  Three of Wilson's claims remain:

> I.      "The state court committed an error of Constitutional magnitude when it refused to exclude Ms. Wilson's confession on the ground that it was the product of an unreasonable seizure in violation of the Fourth Amendment.[9]"  (§ 2254 Pet. 10.)

> II.     "The Circuit Court of Prince William County erred in not excluding Ms. Wilson's confession as the product of the Commonwealth's violation of her Fifth Amendment[10] right against self-incrimination."  (§ 2254 Pet. 17.)

> III.    "Ms. Wilson was prejudiced by the ineffective assistance of her trial attorneys that prevailed on her to plead guilty and receive a sentence of life imprisonment, opting out of going to trail [sic] for the adjudication of guilt or innocence."  (§ 2254 Pet. 30.)

Brown filed the Supplemental Motion and Rule 5 Answer.  Wilson responded to the Supplemental Motion.  Wilson also filed a Motion to Supplement the Record.  Brown responded.  For the reasons that follow, the Court will deny Wilson's Motion to Supplement the Record.  The Court will grant the Supplemental Motion to Dismiss and dismiss the § 2254 Petition.

---

[8] The Court rejected Brown's attempts to characterize the Supreme Court of Virginia's dismissal of Wilson's Claims I–III based on *Anderson v. Warden*, 281 S.E.2d 885, 888 (Va. 1981), and *Peyton v. King*, 169 S.E.2d 569, 571 (Va. 1969), as "adequate and independent state procedural rules" to procedurally default those three claims.  The Court required Brown to submit further briefing on the merits of those claims.  *Wilson*, 2015 WL 5560198, at *5 & n.7 (citations omitted).  Brown has now done so.

[9] The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[10] "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. V.

## II.  Applicable Constraints Upon Federal Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that

he or she is "in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996

further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus.

Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any

claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).  The Supreme Court has emphasized that the question "is not

whether a federal court believes the state court's determination was incorrect but whether that

determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550

U.S. 465, 473 (2007) (citing *Wilson v. Taylor*, 529 U.S. 362, 410 (2000)).  Any "[s]tate court

factual determinations are presumed to be correct and may be rebutted only by clear and

convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. §

2254(e)(1)).

## III.  Analysis:  Motion to Supplement the Record

The Supreme Court has held that "[i]f a claim has been adjudicated on the merits by a

state court, a federal habeas petition must overcome the limitation of § 2254(d)(1) on the record

that was before that state court." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011); *see Williams v.

Stanley*, 581 F. App'x 295, 296 (4th Cir. 2014).  Thus, "evidence introduced in federal court has

5

no bearing on § 2254(d)(1) review." *Pinholster*, 563 U.S. at 185.[11]   Here, the Supreme Court of Virginia adjudicated Wilson's Sixth Amendment[12] claim on the merits when it ruled on the habeas petition she filed in that court, finding that Wilson failed to demonstrate that her counsel rendered ineffective assistance.  Accordingly, this Court may not consider any new evidence that Wilson has provided for the first time with her § 2254 Petition.[13]  *See id*; *Williams*, 581 F. App'x at 296–97.

The Motion to Supplement the Record will be denied.  Further, as discussed below, even if the Court were to consider the evidence Wilson submits in her Motion to Supplement, the Court's analysis would not change.

### IV.  Analysis: Claims I, II, and III

A guilty plea normally forecloses challenges to "antecedent constitutional deprivations." *Vines v. Johnson*, 569 F. Supp. 2d 579, 584–85 (E.D. Va. 2008) (citing *Tollett v. Henderson*, 411 U.S. 258, 266–67, 273 (1973); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294 (4th Cir. 1992)).  "[O]nce judgment on a plea is final, collateral inquiry for constitutional claims that occurred prior to its entry is generally limited to whether the plea itself was knowing and

---

[11] Similarly, "under § 2254(d)(2), the court may grant habeas relief only when the state court's factual determination was unreasonable 'in light of the evidence presented in the State court proceeding.'" *Williams*, 581 F. App'x at 297; *see Watkins v. Rubenstein*, 802 F.3d 637, 649 (4th Cir. 2015) (citation omitted) (explaining that "[b]y its plain terms, § 2254(d)(2) limits our review to the *evidence* placed before the state [habeas] court").

[12] The Sixth Amendment provides, in pertinent part:  "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defence." U.S. Const. amend. VI.

[13] The Court could also deny the Motion to Supplement for failure to comply with United States District Court for the Eastern District of Virginia Local Civil Rule 7(A) ("All motions shall state with particularity the grounds therefor and shall set forth the relief or order sought."). Wilson's Motion to Supplement is devoid of any law or rule that allows her to augment the record before this Court.

6

voluntary." *Id.* at 585 (citing *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 481 (E.D. Va. 2005)). However, a guilty plea does not preclude an ineffective assistance of counsel claim when the claim asserts that the plea itself was obtained as a result of the ineffective assistance. *Id.*

Because Wilson pleaded guilty, unless the Court finds that Wilson's guilty plea was the result of ineffective assistance of counsel, it cannot consider Claim I, alleging a Fourth Amendment violation, or Claim II, alleging a Fifth Amendment violation, because those claims constitute challenges to "antecedent constitutional deprivations." *See Vines*, 569 F. Supp. 2d at 584–85. Thus, the Court will first consider Wilson's Claim III, alleging ineffective assistance of counsel in advising her to plead guilty.

### A. Wilson's Ineffective Assistance of Counsel Claim Fails Because She Has Shown Neither Prejudice Nor Deficient Performance

Wilson argues that she received ineffective assistance of counsel because insufficient evidence existed to convict her, or, if such evidence did exist, she faced no realistic possibility of receiving the death penalty upon conviction. Her arguments founder. First, this record is replete with overwhelming evidence of Wilson's guilt and reasons to believe she would have received the death penalty. Second, Wilson does not provide clear and convincing evidence that she should not be bound by her representations to the Circuit Court that her counsel's performance was adequate and that she pleaded guilty because she was, in fact, guilty. Finally, Wilson does not demonstrate deficient performance by her counsel.

#### 1. Legal Standard for Ineffective Assistance Claims During a Guilty Plea

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient

7

performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

Because Wilson pleaded guilty, in order to establish prejudice, she must show that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 491 (E.D. Va. 2005) (quoting *Burket v. Angelone*, 208 F.3d 172, 194 (4th Cir. 2000)). Assertions by Wilson that she would not have pleaded guilty if she had received better assistance from counsel are not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985)). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. "[W]hat matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).

In conducting the foregoing inquiry, the representations of the defendant, her lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting

8

the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v.*

*Allison*, 431 U.S. 63, 73–74 (1977). "Absent clear and convincing evidence to the contrary, a

defendant is bound by the representations she makes under oath during a plea colloquy." *Fields*

*v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

### 2. <u>Wilson Does Not Show Prejudice From Pleading Guilty</u>

Wilson contends that counsel erred when they "vigorously promoted to . . . Wilson and

her daughter the prosecution's deal of pleading guilty to the two capital murders as the only

opportunity for escaping execution by lethal injection."[14] (§ 2254 Pet. 30.) She avers that such

promotion of the plea constituted ineffective assistance because her likelihood of actually

receiving the death penalty was low. In contrast, looking at all the facts and circumstances of

---

[14] Wilson does not appear to argue that by encouraging her daughter and priest to advise her to plead guilty, her counsel coerced her guilty plea. Instead, she contends that counsel's influence exceeded the bounds of reasonable representation because she should not have pleaded guilty but instead proceeded to trial. Nonetheless, to the extent she does attempt such an argument, the Court would find that the encouragement provided by her counsel, her daughter, and her priest would not amount to coercion. The Court would reject any suggestion that counsel's attempts to persuade Wilson or her loved ones to enter into the plea stemmed from anything but their reasonable belief that the deal represented the best she would likely receive. *See Gaillard v. Warden*, No. 0:12-2962, 2013 WL 1891334, at *5–6 (D.S.C. Mar. 26, 2013) (finding state court's decision that defendant's trial counsel was not ineffective for properly advising defendant, his mother, and his daughters that, without a plea, the death penalty "was a real possibility" to be reasonable finding of fact and application of federal law).
The Commonwealth was pursuing the death penalty pursuant to statute for two violent stabbings, one of which resulted in the death of an eight-year-old boy, Wilson's husband's son from his previous marriage. Wilson faced overwhelming evidence of her guilt, including forensic evidence, cell phone records, and two confessions. Thus, even counsel's "vigorous[] promot[ion]," (§ 2254 Pet. 30), of what they believed to be Wilson's best opportunity to avoid the death penalty falls well within the "wide range of reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (citation omitted). Based on this resounding evidence of guilt, Wilson presents no clear and convincing evidence that she should not be bound by her representations to the Circuit Court that she was satisfied with the assistance of her counsel; that no one had made any threats to her to plead guilty; that she entered into the agreement "freely and voluntarily"; and, that she pleaded guilty because she was, in fact, guilty. (Sept. 4, 2012 Tr. 11–18.)

Wilson's plea, it is clear that the likelihood of Wilson being convicted of capital murder and being sentenced to death was high. By pleading guilty, Wilson received the sentencing benefit—albeit one within a harsh reality—of two life sentences rather than a possible death sentence. It is clear from the record that, in Wilson's case, proceeding to trial would not have been "objectively reasonable in light of all of the facts." *See Fugit*, 703 F.3d at 248.

### a. The Record Demonstrates a High Likelihood of Wilson Being Convicted of Capital Murder

Wilson argues that she received ineffective assistance of counsel because "the evidence of guilt was exceedingly weak." (§ 2254 Pet. 35.) On the contrary, the record here demonstrates that the Commonwealth possessed and presented overwhelming evidence of Wilson's guilt of two counts of capital murder. At approximately 9:10 p.m. on February 1, 2010, two men, Kirill Stoykov and Filip Stoyanov, placed a 911 call to Prince William County, Virginia, summoning the police to 4501 Hanover Court in Dale City, Virginia. (Sept. 4, 2012 Tr. 19.) When police responded, they found two bodies on the floor of the home, both with multiple apparent stab wounds. (*Id.*) Police soon determined that the victims were Slavka Naydenova, Stoyanov's wife, and Paul Wilson, Naydenova's 8-year-old son from her previous marriage to Lester Wilson.[15] (*Id.* at 21–22.) Stoyanov told the police that earlier that evening, his wife had called him on the phone, telling him that a woman who spoke Russian had knocked on her door. (*Id.* at 19–20; App. 523, 2691–92.) The phone call was dropped, and Stoyanov heard nothing else from Naydenova. (Sept. 4, 2012 Tr. 20.) Stoyanov later arrived home and found the bodies.

Shortly after police discovered the bodies, they visited Lester's home, where he lived with his then-wife, Petitioner Natalia Wilson, to deliver a death notification. (*Id.* at 22.) Upon

---

[15] For ease of reference, the Court will refer to Petitioner Natalia Wilson as "Wilson," Lester Wilson as "Lester," and Paul Wilson as "Paul."

notifying the couple of Naydenova and Paul's deaths, police noticed that Lester was inconsolable, but that Wilson showed no emotion. (App. 994.) Police also noticed "an incised wound" on Wilson's hand indicative of knife slippage. (Sept. 4, 2012 Tr. 22; App. 1310–11.) The police asked Lester and Wilson to accompany them to the police station, where they interviewed them and others throughout the next day. (Sept. 4, 2012 Tr. 22.) Although Wilson initially denied knowledge of the murders during the interviews, she later confessed—twice—to the crimes, detailing the precise manner in which she undertook them. (*Id.* at 22–23; App. 2665–69; Resp. Notice Exs. 1–3, ECF Nos. 25-1 to -3.)

During Wilson's interview with police, officers received cell-site location data from her cell phone provider showing that Wilson's phone, which she admitted having with her all day, had been in the area of the murders during the estimated time of the victims' deaths. (App. 286, 320, 932, 939, 2682.) After Wilson's confession, the police took from her the clothing she had indicated she had worn on the night of the murders. (Sept. 4, 2012 Tr. 22–23; Resp. Notice Ex. 2, at 25–27.) On both October 1, 2010, and November 18, 2011, the Virginia Department of Forensic Science issued certificates of analysis showing the results of lab tests, including those comparing a blood stain on Wilson's red sweatpants to Naydenova's DNA. (Sept. 4, 2012 Tr. 23.) The October 1, 2010 Certificate of Analysis found that the victim Naydenova could "not be eliminated as a contributor of [the] DNA profile" found in blood samples taken from the "front middle of the right leg of the sweatpants" and the "exterior front middle of the left leg."[16]

---

[16] As indicated above, even if the Court could consider the new evidence Wilson presented in her Motion to Supplement the Record—an August 28, 2015 Certificate of Analysis issued by the Virginia Department of Forensic Science ("VDFS")—it would not diminish the overwhelming weight of the facts and evidence demonstrating guilt before the Circuit Court, or before the Supreme Court of Virginia on review of Wilson's habeas petition there. Nor would it bolster Wilson's case here.

(Oct. 1, 2010 Cert. Analysis 2; App 22–24); *Wilson v. Baskerville*, No. 131631, at 1 (Va. July 31, 2014) ("Naydenova's blood was found on [Wilson's] clothing.").

Subsequent autopsies found that both victims died from multiple stab wounds to the chest and neck. (Sept. 4, 2012 Tr. 20–21; App. 28–50.) "Naydenova was stabbed over fifty times, sustained multiple defensive wounds to her upper extremities, and her throat was cut." *Wilson*, No. 131631, at 1. "Paul was stabbed in the chest, and his throat was cut." *Wilson*, No. 131631, at 1. An objective analysis of the weight of the evidence demonstrates that the Commonwealth's evidence against Wilson was substantial, and the likelihood of her being convicted of capital murder was high.

### b. The Record Demonstrates a High Likelihood of Wilson Receiving the Death Penalty

Wilson argues that, even if convicted of capital murder, she was unlikely to be sentenced to death for three reasons: (1) at the time of Wilson's plea, Virginia had executed only one woman in nearly 100 years; (2) Wilson's past contained circumstances that would have mitigated against the death penalty; and, (3) a jury could have convicted Wilson of charges lesser than the capital murder charges to which she pleaded. None of Wilson's arguments persuade.

---

On August 28, 2015, years after these initial tests were performed, VDFS issued a "Supplemental" Certificate of Analysis for the red sweatpants, showing "no statistical support for a match between the interior waistband and exposed drawstring of the sweatpants" and the two victims. (Aug. 28, 2015 Suppl. Cert., ECF No. 23.) In her Motion to Supplement the Record, Wilson contends that this recent Certificate of Analysis invalidates the October 1, 2010 Certificate of Analysis and that the Commonwealth's contention that Naydenova's DNA was found on Wilson is now "factually flawed." (Mot. Supp. Record 2.)

Wilson's argument would not persuade. A non-match in an analysis of the "interior waistband and exposed drawstring" of Wilson's red sweatpants, (Aug. 28, 2015 Supp'l Cert. 2), in no way diminishes the findings from the October 1, 2010 Certificate of Analysis that found Naydenova could not be eliminated as a contributor to the blood stains on the *legs* of those sweatpants, (Oct. 1, 2010 Cert. 1). Thus, even were the Court to consider the August 28, 2015 Supplemental Certificate of Analysis, it would not bolster Wilson's case. Wilson would still not be able to demonstrate a reasonable probability that, but for the errors of counsel alleged, she would not have pleaded guilty.

First, Wilson argues that it was extremely unlikely that, if convicted, she would receive the death penalty because Virginia had executed only one woman, Teresa Lewis, in nearly 100 years, and Wilson's crime was not as "atrocious and cruel" as Lewis's. (§ 2254 Pet. 32.) However, the two women's crimes were similarly cold-blooded, rendering Wilson's favorable comparison of herself to Lewis inapt. Lewis pleaded guilty to capital murder after she hired two men to kill her husband and adult stepson for their life insurance proceeds. *Lewis v. Wheeler*, No. 7:07cv538, 2009 WL 588957, at *4–5 (W.D. Va. Mar. 6, 2009) (quoting *Lewis v. Commonwealth*, 593 S.E.2d 220, 222–25 (Va. 2004)). In Wilson's case, the Commonwealth would have presented to the jury evidence that Wilson herself stabbed two people, one of whom was a young child. (App. 29–35; 47-50.) Specifically, the autopsies revealed that Paul suffered a stab wound to his chest six inches deep, and that his throat was slashed by a cut four inches long. Naydenova was stabbed over 50 times, sustaining multiple defensive wounds, and a slashed throat. (App. 47-50; 29–35.) Indeed, Lewis, who received a death sentence because she engaged in murder for hire, could seem less actively vicious than Wilson.

Wilson cannot demonstrate that, had the jury received this evidence of these violent crimes, it would not have sentenced her to death. Indeed, Wilson's "best chance of avoiding the death penalty" was to accept the Commonwealth's plea offer. *See Burket v. Angelone*, 208 F.3d 172, 187 (4th Cir. 2000). Wilson received a sentencing benefit when she pleaded guilty, and proceeding to trial would not have been objectively reasonable. *See Fugit*, 703 F.3d at 260.

Second, Wilson contends that mitigating evidence existed that would have insulated her from capital punishment in the event of a conviction following a jury trial. Wilson cites no legal or factual basis as to why the allegedly mitigating evidence she recites—that she lost a child shortly after birth during her first marriage; that her grandmother was killed when Wilson was

young; that her parents were prisoners of German concentration camps before Wilson's birth; that her family lived "modestly"; and, that she had no criminal record—would have shielded her from receiving the death penalty had she been convicted at trial.

Wilson does not explain how these attempts at mitigation lessen her culpability for a premeditated double homicide. Wilson faced overwhelming evidence that she committed two violent stabbings. Accepting the plea agreement provided her the "best chance" to avoid the death penalty. *Burket v. Angelone*, 208 F.3d 172, 187 (4th Cir. 2000); *see* App. 7 (Wilson's October 17, 2013 affidavit acknowledging that her counsel used the mitigating evidence to "secure[] from the prosecution a commitment to recommend a life sentence").)[17] Thus, Wilson received a sentencing benefit when pleading guilty, and proceeding to trial would not have been "objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).

Finally, Wilson alleges that further investigative opportunities might have shown that she could only have been found guilty of lesser offenses. She argues that the facts suggest that she committed the killings (1) in self-defense because of the possibility that Naydenova attacked her first; (2) in the heat of passion because evidence might show that she and Naydenova engaged in

---

[17] Wilson's mitigation argument further founders because her counsel advised her to plead guilty, as a reasonable strategic decision, notwithstanding the existence of some mitigating evidence. When counsel comes to such a conclusion after a "'thorough investigation of law and facts relevant to plausible options,' that choice is 'virtually unchallengeable.'" *Wilson v. Ozmint*, 352 F.3d 847, 862 (4th Cir. 2003) (quoting *Strickland v. Washington*, 466 U.S. 468, 690 (1984)). The record demonstrably shows the extensive investigation Wilson's counsel undertook regarding mitigating circumstances, including several visits to Russia to interview Wilson's mother, father, former coworkers, and other friends and family. (App. 7, 65–141.)

Wilson herself concedes that her counsel "conducted an adequate investigation of mitigation evidence." (§ 2254 Pet. 33; App. 7 ("The lawyers mustered a substantial amount of mitigating evidence while in Russia.").) The Court agrees. Counsel's decision to advise Wilson to plead guilty in lieu of going to trial and presenting evidence in mitigation, after a thorough investigation of her options, "was strategic, not the product of neglect." *Ozmint*, 352 F.3d at 862.

a fight; or, (3) by "mere negligence," because of the portion of her own confession that Paul "ran into" the knife she wielded. (§ 2254 Pet. 34; App. 2627.) Wilson's assertions cannot succeed because she submits no proffer of evidence supporting any lesser-included offenses. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (requiring "concrete evidence" of exculpatory testimony). Wilson, the only surviving witness to the stabbings, points to no evidence other than her own self-serving testimony to show that the killings were accomplished through self-defense, in the heat of passion, or by negligence.

The record before the Court instead supports the inference that a jury could reasonably reject these defenses at trial. (*See, e.g.*, App. 37 (autopsy of Naydenova showing many injuries consistent with defensive wounds).) Wilson's counsel reasonably advised that a high probability existed that she could be convicted of capital murder and sentenced to death if she proceeded to trial. *See Florida v. Nixon*, 543 U.S. 175, 190 (2004) (acknowledging the "daunting challenge" faced by counsel representing a defendant facing the death penalty and recognizing that the "gravity of the potential sentence" could "vitally affect counsel's strategic calculus"). By pleading guilty, Wilson eliminated the possibility that she would be sentenced to death, and received a sentencing benefit. In Wilson's case, proceeding to trial would not have been objectively reasonable. *See Fugit*, 703 F.3d at 260.

### 3. Wilson Does Not Present Clear and Convincing Evidence That She Should Not Be Bound By Her Representations Under Oath to the Trial Court

Because Wilson pleaded guilty, her representations under oath during the plea colloquy "constitute a formidable barrier in any subsequent collateral proceeding[]." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290 (4th Cir. 1992). To succeed in her collateral attack, she must present clear and convincing evidence that

she should not be bound by the representations she made under oath during the plea colloquy. *See Fields*, 956 F.2d at 1299. Wilson does not come close to presenting such evidence.

On September 4, 2012, Wilson pleaded guilty to two counts of capital murder. (Sept. 4, 2012 Tr. 10–18, 27–28; App. 388–90.) First, Wilson and the Commonwealth proffered to the Circuit Court the plea agreement, proposing that Wilson plead guilty to two counts of capital murder in exchange for an agreed-upon recommended sentence of life in prison[18] and a *nolle prosequi* of the remaining charges.[19] (Sept. 4, 2012 Tr. 4–6, 28; App. 394–96.) Next, the Circuit Court engaged in a lengthy dialogue with Wilson, through the aid of an interpreter,[20] as to the voluntariness of her pleas. (Sept. 4, 2012 Tr. 11–18.) Wilson agreed that she entered into the pleas "freely and voluntarily" and because she was, in fact, guilty of the murders. (Sept. 4, 2012 Tr. 12–13.) Wilson confirmed that she understood that, by pleading guilty, she gave up numerous rights, including the right to a jury trial, the right to confront and cross-examine witnesses, the right not to incriminate herself, and the right to appeal her conviction. (*Id.* at 13–15.) Wilson, a native of Russia, also agreed that she knew she could face deportation and removal upon pleading guilty. (*Id.* at 14.)

---

[18] For convictions of Class I felonies such as capital murder, Virginia provides only two sentencing options: the death penalty or imprisonment for life. Va. Code § 18.2-10(a). The Circuit Court recognized this sentencing scheme at Wilson's guilty plea hearing. (Sept. 4, 2012 Tr. 25 ("The [Circuit] Court: 'There are only two [sentencing] alternatives, and the Commonwealth is removing one of those two in this situation?' [The Commonwealth]: 'Yes, sir.'").)

[19] Before accepting Wilson's plea, the Circuit Court acknowledged that the plea agreement was subject to "review and acceptance by the [c]ourt." (Sept. 4, 2012 Tr. 5.) However, the Circuit Court also reassured Wilson before accepting her plea that it knew of "nothing which would cause [it], at this juncture, to reject [the plea]." (*Id.* at 9.)

[20] The Circuit Court noted on the record that interpreters had assisted in much of the proceedings. Wilson confirmed that she had received sufficient translation of all plea documents before she signed them. (Sept. 4, 2012 Tr. 15–16.) Following the Circuit Court's guilty plea colloquy, Wilson agreed that she had understood all the questions asked by the Circuit Court. (*Id.* at 17.)

The Circuit Court directly asked Wilson whether anyone threatened her or forced her to plead guilty. (*Id.*) Wilson replied, "No." (*Id.*) The Circuit Court also asked Wilson whether any person had made promises to her, outside the plea documents, to induce her to plead guilty. (*Id.*) Again, Wilson responded, "No." (*Id.*)

Wilson agreed that, to her knowledge, all the information in the plea documents was "true and correct." (*Id.* at 16.) Throughout the colloquy, the Circuit Court allowed Wilson to ask questions of her counsel or the judge. (*Id.* at 17.) Wilson had none. (*Id.*) Finally, the Circuit Court asked Wilson, "Are you satisfied with the services of your counsel?" Wilson answered, "Yes." (*Id.* at 17.) The Circuit Court then found that Wilson "entered [her] pleas of guilty freely and voluntarily, understanding the nature of the charges and the consequences of the pleas of guilty" and asked the parties to proffer facts to support the pleas. (*Id.* at 18.) As a factual basis for the pleas, the Commonwealth and Wilson agreed that the Circuit Court should make the extensive evidence and arguments of counsel from the multiple-day hearing on the motions to suppress part of the record. (*Id.* at 7–9, 18–19, 28.)

After hearing the facts proffered by the Commonwealth, and incorporating the evidence received on the motions to suppress, the Circuit Court again found that Wilson entered into the pleas "voluntarily, understanding the nature of the proceedings and the consequences of the pleas of guilty." (*Id.* at 27.) The Circuit Court accepted the pleas and adjudged Wilson guilty. (*Id.*) The Circuit Court imposed the sentence of two consecutive life terms in prison as recommended in the plea agreement. (*Id.* at 27–28.) Finally, the Circuit Court thanked those in the courtroom for their hard work, noting that the process had been "very long and difficult." (*Id.* at 28.)

In light of the thorough colloquy the Circuit Court engaged in with Wilson at the time of her plea, Wilson presents no clear and convincing evidence—indeed, she presents no *persuasive*

evidence—that she should not be bound by the representations she made under oath at the time of the plea.

### 4. Wilson Provides No Evidence that Her Counsel Performed Deficiently

In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.[21] *Strickland v. Washington*, 466 U.S. 668, 697 (1984). However, even if Wilson had succeeded in showing prejudice, her claim for ineffective assistance of counsel would not succeed because she does not show that her counsel's performance fell outside the "wide range of reasonable professional assistance." *Id.* at 689.

Wilson identifies two ways in which her counsel performed deficiently: (1) her counsel should have prepared expert testimony in the area of false confessions; and, (2) her counsel erroneously advised her to plead guilty when the evidence against her was weak. Neither argument would prevail.

First, Wilson avers that her counsel should have prepared expert witness testimony regarding false confessions.[22] This argument could not succeed because Wilson does not propound the favorable testimony this proposed expert would have provided. When a petitioner faults counsel for not calling a witness, the petitioner must provide "concrete evidence of what

---

[21] The Court rests its decision on the lack of prejudice Wilson can show, but chooses to address two claims of deficiency raised by Wilson. In doing so, the Court does not suggest or find that counsel performed deficiently in areas not evaluated here. On the contrary, the record reflects that counsel negotiated a fair plea agreement and sentence in light of the pending charges and the evidence in support of those charges.

[22] Wilson's counsel filed a motion for the appointment of an expert witness, but Wilson apparently pleaded guilty before the Circuit Court ruled on the motion. Motion for Appointment, *Commonwealth v. Wilson*, Nos. CR10000989-00, -990-00, -1031-00 to -1037-00 (Va. Cir. Ct. filed Sept. 2, 2012).

[the witness] would have testified to in exculpation." *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004); *see Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (dismissing claims where petitioner failed to make a specific proffer of the testimony of the omitted witness). Wilson tenders nothing to the Court regarding what the proposed testimony would have been.

Without a proffer, this Court has no information as to expert testimony sought or received. For instance, it is possible that counsel would have received an expert opinion that would have weakened Wilson's defense.[23] *See Tash v. Roden*, 626 F.3d 15, 20 (1st Cir. 2010) (finding trial counsel not ineffective when counsel retained but declined to call as a witness an expert in false confessions because his testimony "could easily have worsened [petitioner's] position"). Wilson thus provides no evidence that her counsel's failure to prepare expert testimony regarding false confessions was not "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, Wilson avers that her counsel erroneously advised her to plead guilty when the evidence against her was weak. As thoroughly discussed above, the record belies Wilson's assertion. The evidence against Wilson was overwhelming, and her risk at sentencing was high, which meant that proceeding to trial would not have been objectively reasonable in her case. *See United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).

"Importantly, the result reached here comports with the substantive equities in this case." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992); *see Strickland*, 466 U.S. at 696 ("[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose

---

[23] The Circuit Court found indicia of reliability of the confession on the record: noting that the "confession itself contains a wide variety of indications that it was the product of [Wilson's] recollection of facts, voluntarily given from her memory, and not a confession to a scenario suggested solely by the investigators." (App. 2665.) The Circuit Court then listed some of these indicators. (App. 2666–69.) Wilson presents no clear and convincing evidence to contradict these findings.

19

result is being challenged."). When "evidence is overwhelming and the crime heinous, . . . avoiding execution [may be] the best and only realistic result possible." *Florida v. Nixon*, 543 U.S. 175, 191 (2004) (citations omitted). While the Court recognizes the severity of both sentences at issue, had Wilson proceeded to trial, she would have opened herself up to a strong possibility of receiving the death penalty. Accepting the plea agreement in lieu of proceeding to trial was "a reasonable and prudent decision." *Fields*, 956 F.2d at 1299; *see Fugit*, 703 F.3d at 260. Wilson's counsel acted firmly "within the wide range of reasonable professional assistance" in advising Wilson to accept the plea. *See Strickland*, 466 U.S. at 689.

In light of the overwhelming evidence of her guilt of capital murder and the benefit she received from entering the guilty plea, Wilson cannot show that proceeding to trial would have been "objectively reasonable in light of all of the facts." *Fugit*, 703 F.3d at 260; *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Wilson does not demonstrate prejudice from counsel's actions, she gives no clear and convincing evidence that she should not be bound by her representations under oath at her guilty plea, and she fails to show that her counsel performed deficiently. The Supreme Court of Virginia's ruling to the same effect was not an unreasonable application of the law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). The Court will dismiss Claim III in its entirety.

### B.    Wilson's Valid Guilty Plea Forecloses Claims I and II, Wilson's Fourth and Fifth Amendment Claims

In Claims I and II, Wilson argues that certain defects occurred in the criminal process leading up to the entry of her guilty plea. In Claim I, she contends that the Circuit Court erred by denying her motion to suppress and failing to exclude her confession as the product of an unreasonable seizure in violation of the Fourth Amendment. In Claim II, she avers that the Circuit Court erred by denying her motion to suppress and failing to exclude her confession as

the result of a violation of her Fifth Amendment right against self-incrimination. The Supreme

Court of Virginia found that these two claims "[were] barred because a voluntary and intelligent

guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea." *Wilson v. Dir. of*

*the Dep't of Corr.*, No. 121042, at 2 (Va. Jan. 11, 2013) (citing *Peyton*, 169 S.E.2d at 571). The

Court does not discern an unreasonable application of the law or an unreasonable determination

of the facts in the Supreme Court of Virginia's rejection of these claims. *See* 28 U.S.C.

§ 2254(d)(1)–(2).

Here, the Circuit Court thoroughly questioned Wilson to ensure that Wilson's guilty plea

was freely, knowingly, and voluntarily made. (*See infra* Part IV.A.3.) Thus, Wilson's

statements under oath foreclose her claim challenging the Circuit Court's ruling on her Fourth-

and Fifth-Amendment-based motions to suppress. *See United States v. Huckabee*, 510 F.

App'x 258, *1 (4th Cir. 2013) ("[A] Fourth Amendment issue raised in a motion to suppress is a

nonjurisdictional defense and is therefore waived by an unconditional guilty plea." (citing

*Haring v. Prosise*, 462 U.S. 306, 319–20 (1983)); *United States v. Collington*, 418 F. App'x

251, 253 (4th Cir. 2011) ("[Defendant's] valid guilty plea constituted a waiver of his right to

raise issues related to the suppression motion.") (citing *Tollett v. Henderson*, 411 U.S. 258, 267

(1973); *United States v. Willis*, F.2d 489, 490 (4th Cir. 1993)). The Court will dismiss Claims I

and II.

## V. Conclusion

For the foregoing reasons, the Court will deny Wilson's Motion to Supplement the

Record. The Court will grant Brown's Supplemental Motion to Dismiss. The Court will dismiss

the § 2254 Petition. The Court will deny a certificate of appealability.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Wilson fails to make this showing.

An appropriate Order shall issue.

_____ /s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9/23/16

22